CHAMBERS OF
**SUSAN K. GAUVEY**
**U.S. MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**MDD_skgchambers@mdd.uscourts.gov**
**(410) 962-4953**
**(410) 962-2985 - Fax**

March 29, 2011


Timothy E. Mering, Esq.
Mering & Schlitz, LLC
343 N. Charles Street, 3rd Floor
Baltimore, MD 21201

Allen F. Loucks, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201

> Re:  Kevin Naundorf v. Michael J. Astrue, Commissioner,
>      Social Security, Civil No. SKG-10-650

Dear Counsel:

Plaintiff, Kevin Naundorf, by his attorney, Timothy E. Mering, Esq., filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), pursuant to 42 U.S.C. § 405(g), who denied his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under sections 401-33 of the Social Security Act ("the Act").

This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301.  (ECF No. 3; ECF No. 7; ECF No. 8). Currently pending before the Court are cross motions for summary judgment.  (ECF No. 16; ECF No. 18).  No hearing is necessary.

Local Rule 105.6.  For the reasons that follow, the Court hereby
DENIES plaintiff's Motion for Summary Judgment (ECF No. 16),
GRANTS defendant's Motion for Summary Judgment (ECF No. 18), and
AFFIRMS the ALJ's decision.

## I.    PROCEDURAL HISTORY

Plaintiff, Kevin C. Naundorf, originally filed for DIB and
SSI under Title II on February 4, 2008 and under Title XVI on
February 21, 2008.  (R. 9, 94–113).  Plaintiff's applications
were denied at the initial and reconsideration levels.  (R. 54–
58, 61–64).  An administrative hearing was held on February 24,
2009 before Administrative Law Judge ("ALJ") Edward J. Banas,
who issued a written decision on October 5, 2009 denying
plaintiff's applications and determining that he was not
disabled within the meaning of the Act.  (R. 9–19, 20–47).  The
Appeals Council denied plaintiff's request for review, making
the ALJ's opinion the final decision of the agency.  (R. 1–5).
Plaintiff now seeks review of that final decision pursuant to 42
U.S.C. § 405(g).  (ECF No. 16).

## II.   FACTUAL BACKGROUND

The Court has reviewed defendant's Statement of Facts
finding it generally accurate, but notes that defendant over-
generalizes with regard to Dr. Burlingame's examination.
Defendant states simply that Dr. Burlingame "described

limitations for the plaintiff; however, he attributed those limitations due to the plaintiff's pain." (ECF No. 18-1, 7). In his Psychological Assessment, Dr. Burlingame reported that plaintiff could only complete 205 of 567 questions of the Minnesota Multiphasic Personality Inventory ("MMPI") test. (R. 351). Dr. Burlingame stated that plaintiff was apparently experiencing pain during the test session and had to stand several times. (R. 352). Additionally, Dr. Burlingame stated that plaintiff's "concentration and task persistence were questionable." (Id.).

### III. ALJ FINDINGS

In evaluating plaintiff's claim for disability, an ALJ must consider all of the evidence in the record and follow the sequential five-step evaluation process set forth in 20 C.F.R § 416.920(a).[1] After proceeding through all five steps, the ALJ in this case concluded that plaintiff was not disabled as defined by the Act.[2] (R. 18-19).

The first step requires plaintiff to prove that he is not

---

[1] The Social Security regulations set forth a sequential, five-step process for evaluating a claimant's eligibility for DIB and SSI. If the agency can make a disability determination at any point in the sequential analysis, it does not review the claims further. 20 C.F.R. § 1520(a).

[2] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A) (2004).

engaged in "substantial gainful activity."[3]  20 C.F.R. §
416.920(a)(4)(I).  If the ALJ finds that plaintiff is engaged in
"substantial gainful activity," plaintiff will not be considered
disabled.  Id.  The ALJ determined that plaintiff had not
engaged in substantial gainful activity since the alleged onset
date of his disability on January 29, 2003.  (R. 11).

At the second step, the ALJ must determine whether
plaintiff has a severe, medically determinable impairment or a
combination of impairments that limit plaintiff's ability to
perform basic work activities.[4]  20 C.F.R. §§ 404.1520(c),
416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  The ALJ
found that plaintiff's degenerative joint disease and obesity
were severe impairments but that his voice (hoarseness) did not
qualify as severe under the Act and that he had no medically
determinable mental impairment.  (R. 11-13).  The ALJ noted that
plaintiff underwent surgery on his back in the 1980s, received
chiropractic treatment in 2001, underwent additional surgery in
2003, began medication for pain in his back and neck, showed

---

[3] Substantial gainful activity is defined as "work activity that is both
substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial
if it involves doing significant physical or mental activities and even if it
is part time or if plaintiff is doing less, being paid less, or has fewer
responsibilities than when he worked before.  20 C.F.R. § 416.972(b).
Substantial gainful activity does not include activities such as household
tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. §
416.972(c).
[4] There is also a durational requirement that plaintiff's impairment last or be
expected to last for at least 12 months.  20 C.F.R. § 416.909.  This is not
at issue in this case.

reduce range of motion in the lumbar spine in a consultative
evaluation in 2008, and has continued to take medication through
2009. (Id.). Next, the ALJ determined that, based upon
plaintiff's height of 5'9 and ½" and weight of 285 pounds, he
has a body mass index ("BMI") of 41.5. (R. 12). The National
Institutes of Health defines obesity as present in any
individual with a BMI of 30.0 or above. (Id.). The ALJ stated
that plaintiff's obesity is clearly severe, "particularly in
light of the negative effect that it could have on his
arthritis/degenerative joint disease." (Id.). The ALJ then
noted that plaintiff's voice was hoarse, but that he was still
capable of communicating. (Id.). Plaintiff's voice impairment
was not severe because it caused "no more than minimal
limitations on the [plaintiff's] ability to perform work-related
activities." (Id.). Finally, the ALJ stated that plaintiff had
no mental impairment as both Dr. Durocher and Dr. Burlingame
found plaintiff's limitations to be caused by pain and not by a
mental impairment. (R. 12–13).

At step three, the ALJ considers whether plaintiff's
impairments, either individually or in combination, meet or
equal an impairment enumerated in the "Listing of Impairments"
in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing" or "LOI").
20 C.F.R. § 416.920(a)(4)(iii). The ALJ found that none of the

5

plaintiff's impairments met or equaled the Listing. (R. 13).
The ALJ stated that plaintiff's degenerative disc disease was
not accompanied by the required motor, sensory, or reflex loss;
did not have spinal arachnoiditis; and did not have lumbar
spinal stenosis resulting in pseudoclaudication. (Id.).
Furthermore, plaintiff's voice impairment could not meet the
Listing because the voice impairment was not severe. (Id.).

Before an ALJ advances to the fourth step, he must assess
plaintiff's "residual functional capacity" ("RFC"), which is
then used at the fourth and fifth steps. 20 C.F.R. §
404.1520(a)(4)(e). RFC is an assessment of an individual's
ability to do sustained work-related physical and mental
activities in a work setting on a regular and continuing basis.
SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. Jul. 2, 1996). When
assessing plaintiff's RFC, the ALJ must consider even those
impairments that are not "severe." 20 C.F.R. § 404.1520(a)(2).
In this case, the ALJ determined that plaintiff had the RFC "to
perform sedentary work . . . except that the [plaintiff] would
require a sit/stand option; could not perform any overhead work,
would require jobs with no sustained oral communication and
would require simple, routine work due to his pain." (R. 13).
In making this determination, the ALJ considered all of
plaintiff's symptoms and medical opinion evidence. (R. 13).

In considering plaintiff's symptoms, the ALJ must consider: (1) whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the plaintiff's pain, and (2) evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms and the extent to which it affects his ability to work. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. Jul. 2, 1996). First, the ALJ determined that plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." (R. 14). Second, the ALJ determined that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible. (Id.). The ALJ noted that both Dr. Durocher and Dr. Jensen reported only minimal findings with no significant findings besides slightly reduced range of motion in the lumbar spine and slight difficulty when walking on his heels. (Id.). Additionally, plaintiff stated that he could take care of his personal needs, prepares short meals, perform some yard work, went outside daily, would travel by car or bicycle alone, could shop for groceries, and would attend Alcoholics Anonymous meetings and church. (Id.).

Evaluating the medical opinion evidence, the ALJ relied heavily upon the opinion of Dr. Jensen. (R. 16). Dr. Jensen

believed that plaintiff's back would cause him problems outside
of the examination room setting, would prohibit him from
carrying heavy objects, and would cause him problems if he was
forced to sit or stand for long periods of time. (Id.). The
ALJ agreed with these findings and, therefore, added limitations
to the general category of sedentary work when determining
plaintiff's RFC. (Id.). The ALJ gave only some weight to the
opinion of Dr. Durocher because the ALJ found no objective
medical evidence to support the variations in Dr. Durocher's
three different medical opinions given over a relative short
period of time. (R. 15). The ALJ gave little weight to the
opinions of State agency consultants because there was no
evidence in the record to support limiting plaintiff to only
light work. (R. 16). The ALJ gave some weight to the opinion
of Dr. Burlingame to the extent that plaintiff did not have a
mental impairment, but did have some pain. (R. 17). The ALJ
discounted Dr. Burlingame's observations regarding plaintiff's
pain because Dr. Burlingame does not specialize in pain and did
not have an opportunity to review plaintiff's entire medical
file. (Id.). The ALJ considered plaintiff's obesity in
determining plaintiff's RFC and stated that the record supported
a RFC of reduced sedentary work. (Id.).

At the fourth step, the ALJ must consider whether plaintiff

retains the RFC necessary to perform past relevant work.[5]  20

C.F.R. §§ 404.1520(e), 416.920(e).  The ALJ found that plaintiff

was not capable of performing his past relevant work as a

seaman, tanker, merchant mariner, or construction worker.

(Id.).  All of plaintiff's past relevant work is medium to heavy

in exertional level and plaintiff's RFC is restricted to limited

sedentary work.  (Id.).

If plaintiff is unable to resume his past relevant work,

the ALJ proceeds to the fifth and final step.  This step

requires consideration of whether, in light of vocational

factors such as age, education, work experience, and RFC,

plaintiff is capable of other work in the national economy.  See

20 C.F.R. §§ 404.1520(f), 416.920(f).  At this step, the burden

of proof shifts to the agency to establish that plaintiff

retains the RFC to engage in an alternative job which exists in

the national economy.  McLain v. Schweiker, 715 F.2d 866, 868-69

(4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th

Cir. 1980).  The agency must prove plaintiff's capacity to

perform the job and that the job is available.  Grant v.

Schweiker, 699 F.2d 189, 191 (4th Cir. 1983).  Before the agency

may conclude that plaintiff can perform alternative skilled or

---

[5] The regulations state that "impairment(s) and any related symptoms, such as
pain, may cause physical and mental limitations that affect what [one] can do
in a work setting . . . residual functional capacity is the most [one] can
still do despite [those] limitations."  20 C.F.R. § 404.1545.

semi-skilled work, it must show that plaintiff possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary.  McLain, 715 F.2d at 869.

The ALJ noted that plaintiff was 36 years old, a "younger individual" according to the Regulations, and had at least a high school education and was able to communicate in English. (R. 17).  Transferability of job skills was not material because the Medical-Vocational Rules supported a finding that plaintiff was not disabled regardless of transferable job skills.  (Id.). The ALJ sought the advice of a vocational expert to determine the extent to which the limitations placed on plaintiff's RFC "eroded the unskilled sedentary occupational base."  (R. 18). The vocational expert testified that plaintiff was capable of performing the requirements of representative occupations such as an assembler, an inspector, and in packing.  (Id.).  After considering plaintiff's age, education, work experience, and RFC, the ALJ determined that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (Id.).  Therefore, the ALJ concluded that plaintiff was not disabled, and had not been under a disability since January 29, 2003.  (Id.).

## IV. STANDARD OF REVIEW

The function of this Court on review is to leave the
findings of fact to the agency and to determine upon the whole
record whether the agency's decision is supported by substantial
evidence, not to try plaintiff's claim de novo.  King v.
Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must
uphold the Commissioner's decision if it is supported by
substantial evidence and if the ALJ employed the proper legal
standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v.
Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829
F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists
of more than a scintilla of evidence but may be somewhat less
than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642
(4th Cir. 1966).  It is "such relevant evidence as a reasonable
mind might accept to support a conclusion."  Richardson v.
Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh
conflicting evidence, make credibility determinations, or
substitute its judgment for that of the Commissioner.  Craig, 76
F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.
1990).  The Commissioner, as fact finder, is responsible for
resolving conflicts in the evidence.  Snyder v. Ribicoff, 307
F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings

11

are supported by substantial evidence, this Court is bound to accept them.  Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

Despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman, 829 F.2d at 517.  The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." Melkoyan v. Sullivan, 501 U.S. 89, 98 (1991).

## V.   DISCUSSION

On appeal, plaintiff asserts that the ALJ failed to obtain a post-hearing orthopedic evaluation of plaintiff, (ECF No. 16-1, 9); failed to offer a supplemental hearing upon obtaining new evidence in the ALJ's proffer letter of May 20, 2010, (id.); failed to address the relevant pain standard, (ECF No. 16-1, 12); and failed to properly evaluate the vocational expert's testimony, (ECF No. 16-1, 13).  After careful evaluation of the ALJ's opinion and the record as a whole, this Court finds that the ALJ's decision was supported by substantial evidence.

### A.   Post-Hearing Orthopedic Evaluation

On three occasions during the hearing, the ALJ stated that he would order a post-hearing orthopedic and psychological

12

consultative examination.  (R. 24–25, 44, 46).  Dr. Burlingame

performed the psychological examination, (R. 349-60), however,

the ALJ never ordered an orthopedic examination.  Plaintiff

contends that "[t]he ALJ's failure to obtain a post hearing

orthopedic consultative examination materially deceived counsel

about the weight to be accorded comparative medical opinions."

(ECF No. 16-1, 9).  Plaintiff argues that "there would be no

reason to enthusiastically grant [plaintiff] a post-hearing

consultative examination if Dr. Jensen's pre-hearing

[consultative evaluation] were adorned with objective medical

findings and a coherent medical source statement."  (Id.).  The

record in this case contains substantial evidence to support the

ALJ's decision, and therefore, the failure to order a

consultative examination is not remandable error.

    The decision to order a consultative examination will only

be made after a full consideration of whether the additional

information is readily available in the existing medical

records.  20 C.F.R. §§ 404.1519a(a)(1), 416.919a(a)(1).  The ALJ

should consider "not only existing medical reports, but also the

disability interview form containing [the claimant's]

allegations as well as other pertinent evidence in [the

claimant's] file."  Id. §§ 404.1519a(a)(1), 416.919a(a)(1).  The

ALJ should order a consultative examination "when the evidence

as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." Id. §§ 404.1519a(b), 416.919a(b).

The record in this case was sufficient to support the ALJ's determination. The medical record contained a comprehensive consultative examination conducted by Dr. Jensen in August 2008. (R. 304-11). Dr. Jensen found that plaintiff would likely have problems with his back if he was asked "to stand or walk for long periods of time," or if he was required "to lift and carry heavy objects for long distances." (R. 308). These findings were supported by the opinions of Dr. Durocher and Dr. Burlingame who also found that plaintiff could only sit or stand for limited periods of time, and plaintiff would not be able to lift heavy objects. (R. 280-90, 331-40, 351-52). The record was sufficient and contained multiple medical opinions, including plaintiff's treating physician, two RFC assessments, a consultative examination, and a consultative psychological examination. (R. 296-344, 346-60); see Bishop v. Barnhart, 78 Fed. Appx. 265, 268 (4th Cir. 2003) (stating that the record was sufficient because the ALJ had "opinions of [plaintiff]'s treating physician, a licensed clinical psychologist, state agency psychologists, and notes from Region Ten Community Services Board"); France v. Apfel, 87 F. Supp. 2d 484, 490 (D.

Md. 2000) (explaining that an ALJ is under no duty to order a consultative examination if the record contains sufficient evidence to make a fair assessment of plaintiff's impairment). The record contains substantial evidence to support the ALJ's determination.

The fact that the ALJ "promised" a post-hearing consultative examination and then failed to order such exam is not remandable error. The ALJ has discretion in deciding whether or not to order a consultative examination. See 20 C.F.R. §§ 404.1519a, 416.919a. The important inquiry under the regulations is whether the record contains sufficient evidence to enable a fair assessment of plaintiff's impairment. France, 87 F. Supp. 2d at 490. The ALJ is not required to obtain additional information if the record contains sufficient evidence for the ALJ to make a disability determination. Id. at 489–90.

The record in this case was sufficient and the ALJ was not required to order another consultative examination. While it would have been helpful for the ALJ to explain why he chose not to order the additional test, it is not required. See id. at 490 n.6 ("Thus, while further explanation by the ALJ of his reasons for not ordering the examination would have been helpful, there are enough facts in the record to enable me to

assess whether the ALJ's decision regarding the claimant's assertions of mental impairments were supported by substantial evidence, and legally correct.").

For the foregoing reasons, the Court finds that the ALJ did not error in failing to order a post-hearing orthopedic consultative examination because the record contained sufficient evidence to properly evaluate plaintiff's impairment.

**B.    Supplemental Hearing After New Post-Hearing Evidence**

After the ALJ obtained the new evidence of Dr. Burlingame's report, the ALJ proffered this new evidence to plaintiff and plaintiff's counsel. (R. 205). Contained in this proffer letter was a list of plaintiff's rights, including the ability to send written comments or any additional records to the ALJ. (R. 205). Plaintiff contends that the ALJ committed remandable error by failing to offer the opportunity for a supplemental hearing after obtaining new evidence contained in Dr. Burlingame's report. (ECF No. 16-1, 10). Plaintiff states that the ALJ failed to offer a supplemental hearing in the proffer letter dated May 20, 2010 listing the plaintiff's rights of action. (Id.; R. 205).

Plaintiff relies on a provision of the Hearings, Appeals and Litigation Manual ("HALLEX"), which is a policy manual written by the Social Security Administration, to argue that a

supplemental hearing is required after a post-hearing consultative examination.  (ECF No. 16-1, 10).  The HALLEX does not, however, "require" a supplemental hearing.  Rather the HALLEX provides that, "if an ALJ receives new evidence after the hearing . . . and the ALJ proposes to enter the evidence into the record as an exhibit, the ALJ must give the claimant . . . the opportunity . . . to request a supplemental hearing." HALLEX I-2-5-28-E, Disclosure of New Evidence After the Hearing (2005).

At the outset, this court notes that, as an internal guidance document, HALLEX lacks the force of law.  Laur v. Astrue, No. TMD 08-112, 2010 WL 481318, at *2 (D. Md. Feb. 4, 2010); see Bordes v. Comm'r, 235 Fed. Appx. 853, 859 (3d Cir. 2007) (explaining that HALLEX does not carry the force of law because it provides internal guidance and not substantive rules); Moore v. Apfel, 216 F.3d 864, 868 (9th Cir. 2000) (same); Melvin v. Astrue, 602 F.Supp .2d 694, 704 (E.D.N.C. 2009) (same); see also Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (stating that the SSA Claims Manual "has no legal force," and does not bind the agency).  Second, this court notes that HALLEX does not require a supplemental hearing, but only the opportunity for plaintiff or plaintiff's representative to request such hearing.  HALLEX I-2-5-28-E.

In this case, the subsequent evidence of Dr. Burlingame's report stated that plaintiff had no mental impairment, had to stand several times during the examination due to back pain, had a hoarse voice but could speak clearly and articulately, and possessed "functional" and "adequate" attention and concentration. (R. 350). Dr. Burlingame further stated that plaintiff was independent, watched TV, drove himself to the appointment, could cook for short periods of time, saw family on a weekly basis, and would attend church. (R. 356–57). The ALJ accepted this opinion and assigned it "some weight" because it was in accord with the record which also contained evidence that plaintiff could drive himself, cook small meals, visited with family, and attended church. (R. 14, 16–17). The ALJ agreed that plaintiff had no mental impairment and did have some pain. (R. 16–17). The ALJ accommodated plaintiff's pain by modifying his RFC to include a sit/stand option, prohibit any overhead work, require no sustained oral communication, and require only simple routine work. (R. 13). The ALJ further provided specific reasons for not accepting parts of Dr. Burlingame's report. The ALJ stated that Dr. Burlingame did not specialize in pain, was not able to review plaintiff's medical record, and plaintiff was not taking Oxycodone at the time of the examination. (R. 17). In sum, the ALJ articulated "specific

reasons for accepting the post-hearing examination in light of the record as a whole." Harris v. Barnhart, No. 2:02CV00072, 2003 WL 21744230, at *2 (W.D. Va. July 28, 2003), aff'd, 95 Fed. Appx. 23 (4th Cir. 2004).

Importantly, the ALJ did provide plaintiff with a copy of Dr. Burlingame's report as well as an opportunity to be heard and respond to that report. (R. 205). Plaintiff did respond to the report by letter dated May 28, 2009, in which he asserted the evidence in Dr. Burlingame's report "supports other evidence in the file" and urged "a fully favorable decision." (R. 206). If plaintiff was dissatisfied with the ALJ's reliance on Dr. Burlingame's report, plaintiff could have submitted additional rebuttal evidence to the ALJ or the Appeals Council. Harris, 2003 WL 21744230, at *2; see also Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (explaining that the Appeals Council must review any new material evidence). Plaintiff failed to submit any rebuttal evidence.

Even if the ALJ erred in omitting plaintiff's right to a supplemental hearing in the proffer letter, the omission would be harmless error. No principle of law requires remand in an attempt to create the perfect opinion, unless such remand is likely to create a different result. Fisher v. Bowen, 869 F.2d

19

1055, 1057 (7th Cir. 1989). Remand is only necessary where the ALJ's error jeopardizes the existence of substantial evidence to support the ALJ's decision or where the ALJ applies the wrong legal standard. Hood v. Astrue, No. 3:07-00641, 2010 WL 4629893, at *12 (S.D.W. Va. Nov. 3, 2010) (internal citations omitted).

It appears clear that the ALJ in this case would have reached the same conclusion regardless of whether a supplemental hearing was held. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming despite ALJ's error because no question that ALJ would reach same conclusion notwithstanding the initial error). The ALJ provided specific reasons for accepting the report of Dr. Burlingame into the record. (R. 16–17). This report was also consistent with substantial evidence in the record and did not undermine the ALJ's decision. Both the report and the record as a whole indicated that plaintiff did not have a mental impairment, did not have a severe voice impairment, did suffer from pain, needed a sit/stand option, could drive himself, could cook short meals, would visit family, and would attend church. (R. 13-14, 16-17, 350, 356-57). While it would have been beneficial for the ALJ to have included plaintiff's right to request a supplemental hearing in the proffer letter, the ALJ's failure to do so was harmless error.

For the foregoing reasons, the Court finds that the ALJ's omission of plaintiff's right to a supplemental hearing in the proffer letter is not remandable error.

### C.    ALJ Properly Analyzed Plaintiff's Pain

Plaintiff contends that the "ALJ's compliance with the relevant pain standard is superficial and not in keeping with" the federal regulations.  (ECF No. 16-1, 12).  Plaintiff argues that the ALJ was completely disinterested in the effects that plaintiff's medications were having on his pain.  (ECF No. 16-1, 13).

In evaluating plaintiff's symptoms, including pain, the regulations require the ALJ:  (1) to consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the plaintiff's pain, and (2) to evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms and the extent to which this affects his ability to work.  20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *2. When assessing the credibility of a plaintiff, the ALJ is to consider the objective medical evidence, as well as seven factors: (1) plaintiff's daily activities; (2) location, duration, frequency, and intensity of the pain; (3) factors which precipitate and aggravate the pain; (4) the type, dosage,

effectiveness, and side effects of any medication taken to alleviate the pain; (5) treatment other than medication used to relieve the pain; (6) measures other than treatment used to relieve the pain; and (7) any other factors concerning plaintiffs limitations and restrictions due to pain. SSR 96-7p, 1996 WL 374186, at *3. Complaints of pain cannot be discredited simply because they are not supported by objective medical evidence. <u>Mickles</u>, 29 F.3d at 919. As the case law makes clear, "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." <u>Id.</u> at 921.

In this case, the ALJ properly evaluated plaintiff's pain. The first step of the pain inquiry is not at issue because the ALJ found that plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." (R. 14). At the second step, however, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the [sic] residual functional capacity assessment." (<u>Id.</u>). Plaintiff is correct that the ALJ should consider the effects of medication. However, this is only one of seven factors to be considered. The ALJ was correct in examining how plaintiff's pain affects

the routine of his life.

The ALJ noted that plaintiff was capable of taking care of his personal needs, could cook small meals, performed some yard work, went outside daily, could drive by himself, did his own grocery shopping, attended AA meetings and church, and had previously changed the spark plugs on his truck. (R. 14–15). Specifically addressing plaintiff's medication, the ALJ noted that plaintiff reported his pain to be a 10, on a scale of 1-to-10, without medication and an 8 with medication. (R. 14). The ALJ also stated that plaintiff was taking a large amount of opioid medication and acknowledged Dr. Jensen's similar statement. (R. 16, 29). The ALJ noted, however, that plaintiff was not taking Oxycodone when he was examined by Dr. Burlingame. (R. 17). Taking all of the factors into consideration, the ALJ found that the record is not consistent with disabling pain. (R. 14–15). See France, 87 F. Supp. 2d at 489 (explaining that taking limited pain medication, caring for one's personal needs, preparing meals, reading magazines, grocery shopping, doing laundry, taking out the trash, and visiting family are not consistent with the claim of disabling pain).

For the foregoing reasons, the Court finds that the ALJ properly evaluated plaintiff's pain.

**D.   ALJ Properly Evaluated the Vocational Expert's**

**Testimony**

Plaintiff's final contention is that the ALJ failed to consider the post-hearing consultative examination of Dr. Burlingame in conjunction with the testimony of the vocational expert. (ECF No. 16-1, 13). Plaintiff highlights the testimony of the vocational expert which stated that 10 percent unproductivity could be work preclusive. (ECF No. 16-1, 13; R. 44-45). Plaintiff argues that this testimony considered in combination with plaintiff's ability to only complete 205 out of 567 questions on the MMPI test during Dr. Burlingame's examination indicates that plaintiff would be unable to maintain a job. (ECF No. 16-1, 13; R. 351).

When presenting hypothetical questions to a vocational expert, the ALJ must base those hypotheticals "upon a consideration of all relevant evidence of record on the claimant's impairment." <u>English v. Shalala</u>, 10 F.3d 1080, 1085 (4th Cir. 1993). The ALJ, however, is afforded "great latitude in posing hypothetical questions." <u>France</u>, 87 F. Supp. 2d at 490 (internal citations omitted). Therefore, the ALJ is permitted to accept or reject restrictions to the hypothetical proposed by plaintiff's counsel. <u>Id.</u> (noting that even proposals more restrictive than the ALJ's hypothetical may be rejected).

In this case, the hypotheticals posed by the ALJ were based on consideration of all relevant evidence. The ALJ asked the vocational expert two hypotheticals. First, whether a hypothetical person similar to the plaintiff could perform any work if the person was in fact experiencing pain at a level of twelve out of ten. (R. 41). The vocational expert's answer to this was no. (Id.). Second, the ALJ asked if a person similar to the plaintiff who could perform sedentary work limited by no sustained oral communication, no overhead work, a sit/stand option, and simple and routine work, could perform a job in the national economy. (R. 43). The vocational expert found that this hypothetical person could work as an assembler, inspector, or as a packer. (Id.).

The ALJ's second hypothetical is supported by consideration of all relevant evidence in the record including Dr. Burlingame's examination. Dr. Burlingame stated in his report that plaintiff could not finish the MMPI test because of pain from sitting for too long. (R. 351–52). Dr. Burlingame noted plaintiff's "apparent pain and need to stand up several times during the exam." (R. 352). The ALJ's hypothetical specifically takes this into consideration by limiting plaintiff's RFC to sedentary work with a sit/stand option. (R. 43). The ALJ further took into account plaintiff's pain by

restricting the hypothetical to requiring simple routine work, no sustained oral communication, and no overhead work. (Id.). Furthermore, the ALJ specifically referenced plaintiff's failure to complete the MMPI test, "presumably because of pain." (R. 17). The ALJ specifically stated that Dr. Burlingame did not specialize in pain, did not treat plaintiff for pain, and did not have the opportunity to review plaintiff's medical records. (Id.). Based on the reports of Dr. Jensen and Dr. Durocher, the ALJ concluded that plaintiff would have the ability to do simple routine tasks. (Id.). This is also supported by plaintiff's stated activities such as performing some yard work, grocery shopping, attending church, and cooking quick meals. (R. 14–15). The ALJ's hypotheticals posed to the vocational expert were based upon all relevant medical and nonmedical evidence contained in the record.

For the foregoing reasons, the Court finds that the ALJ presented the vocational expert with proper hypotheticals based upon a consideration of all relevant evidence.

## VI.   CONCLUSION

Having found the ALJ's analysis to be supported by substantial evidence at each of the five steps of the sequential evaluation process, the Court hereby DENIES plaintiff's Motion

for Summary Judgment (ECF No. 16), GRANTS defendant's Motion for

Summary Judgment (ECF No. 18), and AFFIRMS the ALJ's decision.


Date:    3/29/11                    /s/
                          Susan K. Gauvey
                          United States Magistrate Judge